IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY and FIRST AMERICAN TITLE COMPANY, LLC,<br><br>                Plaintiffs,<br>v.<br><br>NORTHWEST TITLE INSURANCE AGENCY, LLC, et al.<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00229<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul M. Warner |

Before the court is the following spate of discovery motions by Defendant Northwest Title Insurance Agency ("Defendant"): (1) Defendant's motion to quash or modify the subpoenas of Plaintiffs First American Title Insurance Company and First American Title Company, LLC ("Plaintiffs") issued to Westcor Land Title Insurance ("Westcor"), Stewart Title Guaranty Company ("Stewart"), and Western American Title Service ("Western American");[1] (2) Defendant's motion to quash subpoenas to Diamond Wireless, Les Olson Company, and Wendy Smith Interiors;[2] (3) Defendant's motion to withdraw its motion to quash subpoenas to Diamond Wireless, Les Olson Company, and Wendy Smith Interiors and substitute in its place a motion to quash subpoenas to Diamond Wireless and Wendy Smith Interiors and a motion to quash a subpoena to Les Olson Company;[3] (4) Defendant's motion to quash subpoenas to Diamond Wireless and Wendy Smith Interiors;[4] (5) Defendant's motion to quash a subpoena to Zions

---

[1] Docket no. 36.

[2] Docket no. 42.

[3] Docket no. 44.

[4] Docket no. 45.

Bank and for protective order;[5] and (6) Defendant's motion to quash a subpoena to Les Olson Company.[6]  Defendant requested—with no apparent irony—expedited decisions of the myriad motions.

Four additional discovery motions are also pending, including two filed within the last fews days.

The court will address the motions in a logical order.  Before doing so, it appears that the court needs to remind counsel of some principles of the discovery process.  These principles should not be new to either side, but it appears that they have been forgotten or ignored amidst the fracas.

The discovery rules are interpreted and applied liberally to favor discovery.  Discovery is supposed to be an efficient, self-executing exchange of relevant information without the involvement of the court so that cases may be resolved on their merits.  The meet and confer process is intended for the parties to resolve issues.  To the extent disputes cannot be resolved, the meet and confer process should significantly narrow the issues prior the filing of any motion.  Involvement of the court in discovery disputes is a matter of last resort.  Finally, the discovery process is not intended to be a means to play hardball or hide the ball, or for lawyers to fill billable hour quotas or to attempt to gain an improper advantage in the litigation.

The court also refers both parties to the Utah Supreme Court Rules of Professional Practice, which "should be followed by all judges and lawyers in all interactions with each other and in any proceedings in Utah."  Utah R. Prof. Practice 14-301.  Paragraph 17 of rule 14-301 provides:

---

[5] Docket no. 43.

[6] Docket no. 46.

> Lawyers shall not use or oppose discovery for the purpose of harassment or to burden an opponent with increased litigation expense. Lawyers shall not object to discovery or inappropriately assert a privilege for the purpose of withholding or delaying the disclosure of relevant and non-protected information.

The conduct and allegations of conduct by the respective sides and their counsel are troubling to the court. Both sides may well be using the discovery process to harass and delay. Both sides complain of overly broad discovery requests by the other side, while propounding similarly overbroad discovery requests. The court admonishes both sets of counsel for what appears to be overreaching and evasion that borders on abuse of the discovery process.

Counsel and the parties are now warned and are on notice that this court has zero tolerance for the game playing that has become all too common in the discovery process. Going forward, improper conduct or a lack of professionalism and courtesy by either side will result in this court employing the tools at its disposal in a manner likely to ensure such conduct does not happen again.

### A. Motion to Quash the Westcor and Stewart Subpoenas

Defendant moves to quash Plaintiffs' subpoenas to third-parties Westcor and Stewart.[7] Plaintiffs' subpoena to Westcor requires compliance in Maitland, Florida.[8] An initial subpoena from Plaintiffs to Stewart required compliance in Utah; however, Westcor's agent could not be located in Utah, and Plaintiffs served an amended subpoena—the operative subpoena challenged by Defendant—requiring compliance near Westcor's principal place of business in Houston, Texas.[9] Counsel for Defendant filed the motion to quash the Stewart and Westcor subpoenas in the United States District Court, District of Utah.

---

[7] Docket no. 36.

[8] Docket no. 38-1 at 21.

[9] Docket no. 38-1 at 52.

Rule 45 of the Federal Rules of Civil Procedure provides that a motion to quash or modify a subpoena must be brought in "the court for the district where compliance is required," but that that that court may transfer the motion to the issuing court.  Fed. R. Civ. P. 45(d)(3) (providing for quashing or modifying subpoena by "the court for the district *where compliance is required*") (emphasis added).

Here, there is no indication that transfer was sought or ordered by the applicable district courts.  Accordingly, Defendant's motion to quash the Stewart and Westcor subpoenas is **DENIED** without prejudice.

### B. <u>Motion to Quash the Western American Subpoena</u>

Defendant also moves to quash Plaintiffs' subpoena to Western American.[10]  Defendant contends that Plaintiffs' subpoena to Western American improperly seeks documents containing confidential and sensitive information.  Western American apparently produced its documents responsive to the subpoena shortly after the filing of Defendant's motion.[11]  Defendant's motion to quash the Western American subpoena is procedurally and substantively defective, and is **DENIED**.

Procedurally, DUCivR 37-1 requires counsel to meet and confer regarding a discovery dispute prior to filing a motion:

> When parties or non-parties are represented by counsel in a discovery dispute, *the court will not entertain any discovery motion*, unless counsel for the moving party files with the court, at the time of the filing of the motion, a statement showing that counsel making the motion has made a reasonable effort to reach agreement with the opposing counsel on the matters set forth in the motion.

DUCivR 37-1 (emphasis added).

---

[10] Docket no. 36.

[11] Docket no. 38 at 6.

4

Defendant's counsel admits that she failed to meet and confer before filing this motion. Counsel's contention that her failure to confer was a mere "oversight" and was somehow due to "confusion" arising from counsel's planned vacation or a medical issue is unavailing.

Counsel has practiced for many years and has vast experience in discovery practice. To say the failure to fulfill the meet and confer requirement was an "oversight" strains credulity. If counsel's vacation plans or medical issues interfere with her work, then other attorneys need to assist on the case.

Regardless, Defendant's motion is substantively defective. "Generally, a party does not have standing to object to a subpoena issued to a third party, unless the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena." *Richards v. Convergys Corp.*, No. 2:05-CV-00790-DAK, 2007 U.S. Dist. LEXIS 9131, *3 (D. Utah February 6, 2007); *see Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999). Defendants fail to establish that the subject matter of the subpoena is of a personal or confidential manner that would confer standing on Defendant.

For the foregoing reasons, Defendant's motion to quash the Western American subpoena is **DENIED**. The court declines to impose sanctions, but reserves the right to do so should sanctions be warranted for similar behavior in the future.

### C. Defendant's Initial Motion to Quash Subpoenas to Diamond Wireless, Les Olson Company, and Wendy Smith Interiors; Motion to Withdraw its Initial Motion and to Substitute in Two Separate Motions

Defendant's motion to withdraw its initial motion to quash subpoenas to Diamond Wireless, Les Olson Company, and Wendy Smith Interiors appears purely ministerial and is

5

**GRANTED**.[12]  However, the court declines Defendant's request to "substitute" in two different subsequent motions in lieu of the initial motion, particularly since Defendant already filed the motions independently.  Defendant's initial motion to quash subpoenas to Diamond Wireless, Les Olson Company, and Wendy Smith Interiors is deemed **WITHDRAWN**.[13]

### D. Motion to Quash the Subpoena to Wendy Smith Interiors

Defendant moves to quash a subpoena to Wendy Smith Interiors.[14]  Plaintiffs represent that the subpoena to Wendy Smith Interiors has not been served and that Ms. Smith has moved out of Utah.[15]  Defendant does not dispute this representation.  Accordingly, Defendant's motion to quash the subpoena to Wendy Smith Interiors is **DENIED** as moot.

### E. Motions to Quash Subpoenas to Diamond Wireless, Les Olson Company, and Zions Bank

Defendant moves to quash subpoenas to third-parties Diamond Wireless,[16] Les Olson Company,[17] and Zions Bank.[18]

Plaintiffs' subpoena to Diamond Wireless, an apparent phone service provider to Defendant, seeks (1) "all documents" relating to Defendant, and (2) ""all documents reflecting communications between" Diamond Wireless and nearly 40 individuals, most of whom are not defendants.  Plaintiffs assert that many of these individuals are Defendant's agents or employees.

---

[12] Docket no. 44.

[13] Docket no. 42.

[14] Docket no. 45.

[15] Docket no. 50 at 2.

[16] Docket no. 45.

[17] Docket no. 46.

[18] Docket no. 43.

Plaintiffs' subpoenas to Les Olson Company, an apparent computer service provider to Defendant, and Zions Bank, a bank apparently used by Defendant, include identical or virtually identical requests as those included in the Diamond Wireless subpoena.

As discussed above, a party generally does not have standing to object to a subpoena issued to a third party. However, a party does have standing where the subject matter of the subpoena involves a personal right or privilege. *See generally Richards*, 2007 U.S. Dist. LEXIS 9131 at *3; *Transcor*, 212 F.R.D. at 590; *Hertenstein*, 189 F.R.D. at 635.

Here, Defendant has not asserted a basis for claiming a privilege in the phone, computer, or financial records sought by Plaintiffs. However, Defendant does reasonably assert a personal right in at least some of these records. Accordingly, the court finds that Defendant has standing to challenge the Diamond Wireless, Les Olson Company, and Zions Bank subpoenas.

Plaintiffs contend that the documents sought by the subpoenas help establish when Defendant began to compete with Plaintiffs.[19] Taking this representation at face value, Plaintiffs are using an exceptionally large net in an attempt to catch a relatively small fish. As discussed above, the Federal Rules of Civil Procedure and this court strongly favor permitting discovery. However, Plaintiffs' subpoenas are so expansive and seek such marginal information, that the court will not permit the subpoenas to proceed in their current form.

Defendant's motions to quash the subpoenas to Diamond Wireless, Les Olson Company, and Zions Bank are **GRANTED** without prejudice. Plaintiffs may issue new subpoenas to these entities consistent with this decision. Plaintiffs must tailor any new subpoena as narrowly as practicable to relevant or likely relevant topics and to avoid unnecessary intrusion into private information. Without limitation, any subpoena must expressly exclude requests for (1) data or

---

[19] Defendant concedes that it has competed with Plaintiffs since at least March 2015.

information backed up by Les Olson Company on behalf of any of the defendants, and (2) documents or information constituting personal telephone or banking records.  Plaintiffs are also strongly encouraged to limit the number of individuals listed in any subpoena—the mere fact that a third-party individual is an "agent or employee" of Defendant does not mean that discovery of their phone, computer, or banking records is relevant, necessary, or permissible.

The court strongly encourages the parties to cooperate in narrowing the scope of requests prior to the issuance of any additional subpoenas.

As to all subpoenas, the court clarifies the standard protective order in this case as follows: Any party that claims a direct interest in protecting information that is confidential and/or proprietary as those terms are used in the standard protective order may request that that information be designated as "PROTECTED INFORMATION" pursuant to the provisions and procedures of the standard protective order, regardless of whether the information is produced by a third party.  Pursuant to the procedures provided in the standard protective order, another party may challenge such a designation, if the parties are unable to reach an acceptable compromise.

**IT IS SO ORDERED**.

DATED this 9th day of October, 2015.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge