IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY AND FIRST AMERCAN TITLE COMPANY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWEST TITLE INSURANCE AGENCY, LLC; MICHAEL SMITH; JEFF WILLIAMS; AND KRISTI CARRELL<br><br>Defendants. | MEMORANDUM DECISION<br><br>Case No. 2:15-cv-00229<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul M. Warner |

District Judge David Nuffer referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A). Before the court is a motion for spoliation sanctions[1] by First American Title Insurance Company and First American Title Company (collectively "FATCO") against Northwest Title Insurance Agency, Mike Smith, Jeff Williams, and Kristi Carrell (collectively "Defendants"). The court carefully reviewed the papers submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful and is unnecessary. *See* DUCivR 7-1(f).

## BACKGROUND

Defendants Mike Smith and Jeff Williams were previously employed at FATCO. In and around January 2015, the two men began working together to establish a competing company,

---
[1] Docket no. 155.

1

Northwest Title Insurance Agency ("Northwest"). When communicating by email regarding setting up Northwest, they used their wives' emails, rather than their FATCO email accounts. Their efforts occurred primarily outside of their normal work hours at FATCO.

The men resigned their FATCO positions on March 9 and 10, 2015, and began working at the newly-formed Northwest. Smith deleted certain personal files from his FATCO computer before leaving FATCO. Smith returned a FATCO-issued iPad to FATCO within a few days of his departure. Mr. Smith deleted personal files and applications from the iPad prior to its return. FATCO alleges that Smith factory-reset the iPad before returning it.

Within days of the men's departures, other co-workers left FATCO to work for Northwest. Individuals leaving FATCO were instructed not to bring FATCO documents; nevertheless, some documents were taken. Some of these documents were subsequently lost or destroyed.

On March 17, 2015, FATCO sent preservation demand letters to certain Northwest employees.[2] Smith complied with the preservation demand and instructed other recipients of the preservation demand "that they should follow the instructions in the [l]etter and to not delete or destroy anything that could constitute evidence in any proceeding against them."[3] On April 7, 2015, FATCO served the underlying complaint on Defendants. Shortly thereafter, Smith met with Northwest branch managers and instructed them to preserve documents related to the lawsuit, and to relay that instruction to all employees in the branch.[4] FATCO served its first set of discovery requests on June 19, 2015.

---

[2] Docket no. 155-4.
[3] Docket no. 169-13.
[4] *Id.*

FATCO brought the current motion under rule 37 of the Federal Rules of Civil Procedure seeking sanctions against Defendants for alleged spoliation of evidence. The facts relating to specific issues raised by FATCO's motion are discussed below in conjunction with the court's analysis of the respective categories.

## LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure provides the framework for analyzing spoliation of electronically stored information ("ESI"). Rule 37 provides:

> If electronically stored information that should have been preserved in the *anticipation or conduct of litigation* is lost because a *party failed to take reasonable steps to preserve* it, and it *cannot be restored or replaced through additional discovery*, the court:
>
> (1) upon *finding prejudice* to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon *finding that the party acted with the intent to deprive another party of the information's use in the litigation* may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37 (emphasis added).

The Tenth Circuit has applied the same Rule 37 analysis to non-ESI spoliation issues, and emphasized that the litigation must be "imminent" for the duty to preserve to arise:

> Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that *litigation was imminent*, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007). But if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. "*Mere negligence in losing or destroying records is not enough* because it does not support an inference of consciousness of a weak case."

3

>*Aramburu,* 112 F.3d at 1407. Without a showing of bad faith, a district court may only impose lesser sanctions.

*Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (emphasis added).

## ANALYSIS

FATCO brought the current motion under rule 37 of the Federal Rules of Civil Procedure seeking sanctions against Defendants for alleged spoliation of evidence. The alleged spoliation issues can be divided into five general categories, which are divided here by headings.

### A. Timing of Duty to Preserve and Failure Issue a Written Litigation Hold Notice

FATCO claims that Defendants failed to preserve evidence because they issued a verbal litigation hold notice, rather than a written one, and that Defendants' duty to preserve arose as soon as Defendants set up Northwest.[5] FATCO contend that an oral litigation hold is inadequate and potentially "[constitutes] gross negligence" because the failure to issue a written hold is "likely to result in destruction of relevant information."[6]

Issuance of only an oral litigation hold is problematic, and depending on circumstances, may fail to fulfill a party's discovery obligations. However, FATCO fails to cite any authority for the proposition that an oral litigation hold is *per se* violative of a party's duty to preserve. The case repeatedly quoted by Plaintiffs, *Philips Elecs. N. Am. Corp. v. BC Tech.*, involved the failure to issue a litigation hold until more than 17 months after litigation commenced and deliberate, systematic spoliation and overwriting of nearly 18,000 files by officers and executives. 773 F. Supp. 2d 1149, 1196 (D. Utah 2011) (finding bad faith where, hours after the court ordered defendant to stop deleting files and to turn over certain documents, "executives and employees began deleting a massive number of files from their computers"). However, the

---

[5] Docket no. 155 at 7 and 10.

[6] *Id*. at 8.

*Philips* case did not involve or address the sufficiency of an oral litigation hold.  Further, the *Philips* opinion relied on a Southern District of New York decision that was subsequently abrogated by the Second Circuit.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 481 (S.D.N.Y. 2010) *abrogated by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012).  In rejecting the lower court's position, the Second Circuit noted that failing to issue *any* litigation hold was merely "one factor" in considering discovery sanctions.  *Chin*, 685 F.3d at 162 ("We reject the notion that a failure to institute a 'litigation hold' constitutes gross negligence *per se*.").  Other than generalities and conclusory statements, FATCO fails to allege prejudice from issuance of an oral hold, as opposed to a written hold.

FATCO also argues that Defendants' duty to preserve started on January 26, 2015, when Northwest was incorporated.[7]  This is clearly overreaching by FATCO.  Rule 37 provides that the duty to preserve arises when there is "anticipation . . . of litigation."  Fed. R. Civ. P. 37.  The Tenth Circuit has interpreted this to mean when a party "knew, or should have known, that *litigation was imminent*."  *Burlington N. & Santa Fe Ry. Co.,* 505 F.3d at 1032.  Taking steps to start Northwest, even if Defendants knew starting the competing company would be contentious and actively opposed, is insufficient to establish imminent litigation.  FATCO's position is sweeping in scope and would effectively render a company's every action the basis for a litigation hold.

Defendants contend that the duty arose "no earlier than April 7, 2015, when this lawsuit was served."[8]  Although service of a complaint may trigger the duty to preserve under some

---

[7] Docket no. 155 at 10.

[8] Docket no. 169 at 28.

circumstances, the date of service of the complaint here is too late. Defendants knew or reasonably should have known that litigation was imminent shortly after receipt of the preservation demand on March 18, 2015. The court recognizes that as a practical matter a few additional days should be allowed to permit recipients to review the matter, seek the advice of counsel, and determine appropriate next steps. Defendants' argument that delivering a preservation demand to Northwest's executives and company founders only notified the individual recipients, not Northwest, is disingenuous.

FATCO fails to establish what ESI, if any, may have been lost due to an oral hold, as opposed to a written hold. Likewise, the court finds that Defendants' duty to preserve arose no earlier than March 18, 2015.

### B. Deletion of Emails from Shared Personal Accounts

Plaintiff contends that deletion of emails from Smith's and William's personal accounts that they shared with their respective wives was spoliation.

In setting up Northwest, Smith and Williams used family emails accounts, rather than their FATCO email accounts. Defendants subsequently determined that emails from these personal accounts had been deleted at some point in time. It appears that the emails were deleted by the men's wives as part of routine account maintenance practices. Smith testified that his wife, Ruth Smith, deleted e-mails on the account. Ruth Smith stated that it was "our family e-mail," that she deleted emails because she had "over 10,000 e-mails on [the] account," and that she deleted "them randomly to get rid of them."[9] Ruth Smith also testified that she could not remember when she deleted emails, but that it was "a long time ago."[10] It appears that FATCO

---

[9] Docket no. 169-24.

[10] *See* docket no. 187 at 7.

never deposed Williams' wife, but Williams declared that "I can only surmise that my wife cleaned out her email box, and did so some time ago."[11] FATCO claims that the loss of these emails constitutes spoliation. At least some of the deleted emails from these accounts were recovered from third parties.

Analyzed through the framework of Rule 37, it is clear that some potentially relevant ESI was lost. However, there are no specific dates to establish when the emails were deleted, other than statements that indicate it could likely have been before the time that the duty to preserve arose. Similarly, FATCO fails to establish that the emails, or a significant portion of them, "cannot be restored or replaced through additional discovery," or explain the actual prejudice to FATCO. Fed. R. Civ. P. 37(e). Rule 37's plain language does not support the argument that every loss of ESI is *per se* prejudicial for purposes of spoliation sanctions. Rule 37(e)(1)'s requirement of the court's "finding prejudice to another party from loss of the information" before impose sanctions would be meaningless otherwise.

On the facts before it, the court cannot determine that ESI was lost or destroyed after the duty to preserve arose, that FATCO was prejudiced by the loss of these emails, or that a significant portion of the lost ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). In fact, some portion of the ESI has been recovered or replaced through third parties. Accordingly, imposition of sanctions under Rule 37 would be improper.

### C. Deletion of Documents from Smith's FATCO Computer and iPad

Smith "deleted a number of files" from his work computer immediately prior to his resignation" from FATCO on March 9, 2015.[12] Smith deleted personal documents, but left other

---

[11] Docket no. 169-22 at 3.

[12] Docket no. 155-2 at 45.

ESI behind.[13]  Smith also returned a FATCO iPad to FATCO "two or three days" or "within a week of when [he] left."[14]  Smith asserts he only deleted personal photos and applications from the iPad, "do[es] not know how to return an iPad to factory settings," and does not believe he reset the iPad.[15]  Smith noted that as a matter of practice he did not save documents on the iPad and only used it to send or receive emails on FATCO's system.[16]  FATCO also appears to have technological controls that limited how the iPad could be used, including blocking access to non-FATCO email accounts.  FATCO claims that the iPad was "wiped back to factory settings" upon return to FATCO.[17]

It is not clear whether potentially relevant ESI was lost.  There is no evidence that Smith deleted items other than personal pictures, documents, or applications.  No argument has been made that Smith's vacation pictures or a favorite fondue recipe are somehow relevant.  Further, any deletions occurred before receipt of the preservation demand on March 18, 2015, and thus before the duty to preserve arose.  Finally, FATCO has not established that the ESI "cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e).  Smith's computer and iPad remained, and presumably remain, in the possession and control of FATCO.  Other than a conclusory statement about recovery of iPad data by a FATCO employee, FATCO fails to discuss (1) any efforts to restore computer files or the iPad, or (2) any backups that might exist.  Accordingly, there is no basis for sanctions under Rule 37.

---

[13] *See* docket no. 169-1.

[14] *Id*. at 13.

[15] Docket no. 169-13.

[16] *Id*.

[17] Docket no. 155 at 5.

### D. Smith's Northwest Emails Between February 28 and March 10

Smith began using a Northwest email account for business purposes around February 28, 2015.[18] During discovery, Smith produced emails from his Northwest account, but could not locate emails dated prior to March 10, 2015. Smith does not recall deleting the emails, but says that if he did, it would have been before he received the preservation demand.[19] FATCO was able to recover some emails through third party subpoenas.

The volume of potential ESI here appears very limited—approximately 11 days of emails from a time period when Smith was still working at FATCO during the regular workday. There is no evidence of deletion of the emails, other than Smith's statements that he does not recall deleting the emails, but that he would not have done so after receipt of the preservation demand.[20] FATCO acknowledges that at least some of the emails have been recovered from third party discovery. It is also unclear how FATCO would be prejudiced from the unavailability of this part a limited set of emails.

Given the circumstances, sanctions are not warranted under Rule 37.

### E. FATCO Documents Destroyed by Non-Party Employees

FATCO highlights three separate former FATCO employees that FATCO alleges spoliated evidence.[21] These individuals are not defendants in this action and do not appear to be principals at or owners of Northwest.

#### 1. Angie Flint

Angie Flint ("Flint") had two thumb drives with FATCO documents.[22] On March 9,

---

[18] Docket no. 155-2 at 42.

[19] Docket no. 169-13 at 6.

[20] *Id.*

[21] Docket no. 155 at 6 and 7.

2015, her penultimate day at FATCO, she copied personal photos from her FATCO computer onto a drive. That same day she took the drive home and deleted two FATCO documents that she found there.[23] Flint does not know what happened to that thumb drive.

The second thumb drive contained marketing materials that Flint used in her dealings with customers.[24] Mark Webber, a FATCO executive, testified that the marketing materials were not confidential and were distributed to customers.[25] Flint threw away the second thumb drive at a time she could not specify and denied using the materials on the drive at or for Northwest.[26]

The documents on the first thumb drive were deleted prior to the preservation demand, and hence before any duty to preserve arose. The timing of the deletion of the documents on the second drive is unknown. However, given that the documents were described with sufficient detail for a FATCO executive to opine on their confidentiality and that FATCO has the original documents, FATCO fails to establish that (1) documents were actually "lost," or (2) the documents "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37. Further, it is unclear how loss of these files would be prejudicial to FATCO.

Accordingly, the requirements under Rule 37 for imposing sanctions are not met for Flint.

### 2. Elizabeth Cole

Elizabeth Cole ("Cole") took numerous hard copy documents and a thumb drive containing FATCO documents when she left the company on March 10, 2015.[27] Cole testified

---

[22] *See* docket no. 155 at 6.

[23] Docket no. 169-5.

[24] *Id.*

[25] Docket no. 169-25.

[26] Docket no. 169-5.

[27] Docket no. 169-9.

that she had no reason to use a thumb drive in the ordinary course of her work at FATCO.[28] The hard copy documents appear to have been client and lender documents.[29] Some of the documents were returned to FATCO, while others were recorded if the transaction closed at Northwest.[30] Cole did not know what happened to each copy of the documents, and could not locate them. Cole believes that remaining copies "got shredded," but she did not know and could not remember.[31] The thumb drive contained affidavit forms.[32] Cole asserts that she never used these files and that she cannot find the thumb drive.[33] Cole did not know when the documents and files were destroyed or lost.

Files on the thumb drive are ESI, while the hard copies are not. However, the court analyzes spoliation of non-ESI documents under the same rubric of Rule 37. *See Turner*, 563 F.3d at 1149.

Based on the evidence before the court, it appears likely that the thumb drive and documents were lost or destroyed after receipt of the preservation demand. Cole joined Northwest shortly before receipt of the preservation demand. She close transactions or attempted to close transactions at Northwest based on or relating to the documents, which presumably did not occur within just days of her departure from FATCO. Defendants had an obligation to preserve the documents as of approximately March 18, but failed to take reasonable steps to do so. Cole could not recall all of the files and documents with specificity, and there is no

---

[28] *Id.* at 14.

[29] Docket no. 169-9.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

mechanism to enable FATCO to recover or restore the documents through further discovery. Based on the types of documents spoliated and their potential relevance to the issues of the case, the court finds that FATCO is prejudiced by not having access to the documents and the thumb drive. Cole admitted that some or all of the spoliated materials were used by or on behalf of Defendants in the course of closing or attempting to close transactions. These documents go directly to the claims and issues of the case, in particular the causes of action for breach of contract, tortious interference with contract, misappropriation of trade secrets, and unfair competition.[34]

FATCO has not provided any evidence suggesting that Defendants "acted with the intent to deprive another party of the information's use in the litigation" under Rule 37(e)(2). Accordingly, FATCO is not entitled to evidence preclusion, an adverse inference, or monetary sanctions under Rule 37(e)(2). Rather, under Rule 37(e)(1), the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

While the full range of curative measures available to a court under Rule 37(e)(1) is unclear, the Advisory Committee's commentary on Rule 37(e)(1) notes that the court has broad discretion in crafting an appropriate remedy.

> Once a finding of prejudice is made, the court is authorized to employ measures "no greater than necessary to cure the prejudice." The range of such measures is quite broad if they are necessary for this purpose. There is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their effect on the particular case. But authority to order measures no greater than necessary to cure prejudice does not require the court to adopt measures to cure every possible prejudicial effect. Much is entrusted to the court's discretion.
>
> In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present

---

[34] Docket no. 2.

> evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies. Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation. An example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case. On the other hand, it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence.

Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

Here, the court orders that the parties will be permitted to present evidence and argument to the jury regarding the spoliation of the Cole ESI and documents. However, the jury will not be instructed regarding any presumption or inference regarding those materials. To avoid impinging on the trial judge's purview in presiding over and conducting the trial, this court leaves to the trial judge to determine the appropriate mechanism for permitting the presentation of the evidence and argument at trial on this issue.

### 3. Jeremy Bawden

Jeremy Bawden ("Bawden") took a printout of a customer list when he left FATCO for Northwest on March 23, 2015.[35] Bawden stated that he "shredded" the list "a day or two, maybe three" after starting at Northwest.[36] According to Bawden, Doug Smith told him not to bring any documents from FATCO, and Bawden shredded the list without ever using it at Northwest.[37] The

---

[35] Docket no. 169-8.

[36] Docket no. 169-8 at 6.

[37] Docket no. 169-8.

customer list was a printout of an Excel document, which Bawden left on his FATCO computer.[38]

Bawden left FATCO on March 23, 2015, after the preservation demand was sent. Bawden left the original electronic version of the list on his FATCO computer, and there is no indication that the printout had any substantive notations or modifications. Thus, FATCO fails to establish that (1) documents were actually "lost," or (2) the documents "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37. Again, it unclear how loss would be prejudicial to FATCO.

Accordingly, the requirements under Rule 37 for imposition of sanctions are not met for the Bawden materials. *See also Turner*, 563 F.3d at 1149.

## CONCLUSION

Accordingly, for the foregoing reasons, FATCO's motion for spoliation sanctions is **GRANTED IN PART AND DENIED IN PART**. As discussed above, the spoliation motion is **GRANTED** as to the Cole materials. The parties will be permitted to present evidence and argument to the jury regarding the spoliated Cole ESI and documents, pursuant to the direction of the trial judge. FATCO's motion is **DENIED** as to all other claims of spoliation. Defendants request for sanctions against FATCO under 28 U.S.C. § 1927 is **DENIED**.

**IT IS SO ORDERED**

DATED this 31st day of August, 2016

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[38] *Id*.