# EXHIBIT 5

```
             IN THE UNITED STATES DISTRICT COURT

       FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

                         -ooOoo-
```

FIRST AMERICAN TITLE         : CASE NO. 2:15-cv-00229
INSURANCE COMPANY and
FIRST AMERICAN TITLE         :
COMPANY, LLC,
                             :
        Plaintiffs,            DEPOSITION OF:
                             : **KURT AARON ANDREWSEN**
v.
                             : TAKEN: SEPTEMBER 3, 2015
NORTHWEST TITLE
INSURANCE AGENCY, LLC;       : JUDGE DAVID NUFFER
MICHAEL SMITH; JEFF
WILLIAMS; AND KRISTI         :
CARRELL,
                             :
        Defendants.
_____  :


**THIS TRANSCRIPT CONTAINS TESTIMONY MARKED CONFIDENTIAL**


        Deposition of KURT AARON ANDREWSEN, taken on behalf of the defendants, at 60 East South Temple, Suite 500, Salt Lake City, Utah, before TAMERA STEPHENS, RPR, CRR, CSR, Reporter for the State of Utah, pursuant to Notice.

```
09:17:18

09:17:34

09:17:56

09:18:17

09:18:27
```

1  Q    In connection with your responsibilities for
2  human resource in Utah, were you responsible for
3  employees signing noncompete agreements?
4  A    Yes.
5  Q    And what level of employee was required to sign
6  a noncompete?
7  A    We didn't have a policy based on level.
8  Q    What was your policy based on?
9  A    Based on individual circumstance and the facts
10 surrounding it.
11 Q    What were the circumstances and the facts that
12 would require you to call -- require someone to sign a
13 noncompete?
14 A    Each case is different.  For example, an
15 employee might want a pay raise, and as consideration
16 for a pay raise, they might sign a noncompete.
17 Q    Just because they got a pay raise?
18 A    No.  It would be a special circumstance where
19 they are seeking something outside of the norm of our
20 normal practices for pay raises.
21 Q    Okay.  So you never looked at the job
22 responsibilities as a criteria for when you had somebody
23 sign a noncompete; is that correct?
24 A    No.
25       MR. McLAUGHLIN:  Objection to form.

```
09:18:38
09:18:58
09:19:11
09:19:28
09:19:49
```

1  Q   (BY MS. WOOD)  What's incorrect about what I
2  said?
3  A   Well, you are making an assumption that based
4  on my statement, we didn't look at that.  I mean, I said
5  it depends because multiple criteria.  What was their
6  job?  What was their responsibilities?  Were they an
7  escrow officer?  Were they a salesperson?  Were they a
8  manager?  Were they in a position where they controlled
9  client lists and other items of significance for the
10 company, or were they a receptionist that just answered
11 phones?  I mean, we did weigh that in our
12 decision-making process.
13 Q   Okay.  So what employees were responsible for
14 customer lists?
15 A   Every employee to a certain extent.
16 Q   Does FATCO have an official customer list?
17 A   Yes.
18 Q   And what is that called?
19 A   The GAB or global address book.
20 Q   And how does an employee obtain a copy of
21 the -- is it the GAB?
22 A   They have access to it through our FAST
23 software.
24 Q   Okay.  Any employee has access to it through
25 your FAST software?

```
 1      A    Rights are limited, but they have access to
 2   their portion for their branch, for their area, for
 3   their customers.
 4      Q    Okay.  Did you require all employees who had
 5   access to the GAB to sign noncompetes?
 6      A    No.
 7      Q    Did you require all escrow employees to sign
 8   noncompetes?
 9      A    No.
10      Q    Did you require all sales managers to sign
11   noncompetes?
12      A    No.
13      Q    So there is no title in the company that
14   automatically would require a noncompete?
15      A    Not to my knowledge.
16      Q    Do you have a noncompete?
17      A    I do not.
18      Q    Did you have a noncompete when you were
19   regional director of human resources?
20      A    I did not.
21      Q    Have you ever had a noncompete?
22      A    No.
23      Q    How many employees approximately in the state
24   of Utah have noncompetes?
25           MR. McLAUGHLIN:  Objection.  No foundation.
```

```
                  1            THE WITNESS:  I don't know.
                  2       Q    (BY MS. WOOD)  So as I understand, there were
                  3  no criteria for who had to sign a noncompete; is that
                  4  correct?
   09:21:21       5            MR. McLAUGHLIN:  Objection to form.
                  6            THE WITNESS:  Not necessarily.
                  7       Q    (BY MS. WOOD)  You can't tell me any criteria?
                  8            MR. McLAUGHLIN:  He already has.
                  9            THE WITNESS:  I have --
   09:21:36      10            MS. WOOD:  That's a speaking objection.
                 11  I'm sorry.
                 12            THE WITNESS:  I have given you various
                 13  criteria.  What I have told you is each situation is
                 14  independent and is examined and analyzed as an
   09:21:50     15  independent instance, not, "Here's the book.  Follow it.
                 16  This person fits that criteria so give them a
                 17  noncompete."  We don't have that, no.
                 18       Q    (BY MS. WOOD)  Okay.  And there are no
                 19  noncompetes in California, are there?
   09:22:06     20            MR. McLAUGHLIN:  Objection.  No foundation.
                 21            THE WITNESS:  I don't know.
                 22       Q    (BY MS. WOOD)  How about in Nevada?
                 23            MR. McLAUGHLIN:  Objection.  No foundation.
                 24            THE WITNESS:  I don't recall.
   09:22:12     25       Q    (BY MS. WOOD)  How about in Arizona?
```

```
 1                MR. McLAUGHLIN:  Objection.  No foundation.
 2                THE WITNESS:  I don't recall specifics, but I
 3   seem to remember yes, we do have a few in Nevada -- or
 4   in Arizona.
 5        Q    (BY MS. WOOD)  What do you mean by "a few"?
 6        A    Less than five.  I don't know an exact number.
 7        Q    And how many do you have in Utah?
 8        A    I don't know an exact number.
 9        Q    Approximation.
10                MR. McLAUGHLIN:  Objection to form.
11                THE WITNESS:  I don't know.
12        Q    (BY MS. WOOD)  More or less than in Arizona?
13        A    More.
14        Q    How many employees does FATCO have in Arizona?
15        A    I don't know.
16        Q    When you were managing human resources in
17   Arizona, how many employees did they have?
18        A    It depends.  My scope was over direct
19   operations.  There are multiple divisions of
20   First American to which I had no access to.
21        Q    Okay.  Well, how many in direct -- within your
22   scope?
23        A    Within my scope?  Roughly 300.
24        Q    And how many employees in Utah?
25                MR. McLAUGHLIN:  Objection to form.
```

```
 1              THE WITNESS:  Since leaving HR, I don't know an
 2   exact number.
 3        Q    (BY MS. WOOD)  Well, at the time you were in
 4   HR.
 5        A    We had roughly 160, 170.
 6        Q    And of that number, you can give me no estimate
 7   of the number who had noncompetes?
 8        A    No.
 9             (Exhibit 1 was marked.)
10        Q    (BY MS. WOOD)  I'm handing you a copy of a
11   document that has been marked as Exhibit 1.  Is this
12   confidential business information of FATCO?
13             MR. McLAUGHLIN:  Objection.  No foundation.
14             THE WITNESS:  I have never seen this before.
15        Q    (BY MS. WOOD)  Is it on the GAB?
16        A    No.  This is a utilities list.
17        Q    Okay.  And as part of your human resources
18   duties, you required people to sign confidential
19   information agreements, didn't you?
20        A    Yes.
21        Q    Is this the type of document you were trying to
22   protect from [verbatim] your confidential information
23   agreement?
24             MR. McLAUGHLIN:  Objection.  No foundation.
25             THE WITNESS:  This isn't a First American
```

|   |   |
|---|---|
| 1 | Q    Okay.  Did she ever sign a new contract when |
| 2 | she became manager of the Sugarhouse office? |
| 3 | A    I don't recall. |
| 4 | Q    Wouldn't you assume that that would be |
| 5 | somewhere in her personnel file if she had? |
| 6 | A    Yes. |
| 7 | MR. McLAUGHLIN:  Objection to form. |
| 8 | Q    (BY MS. WOOD)  Did she receive the same health, |
| 9 | dental, 401(k), disability, and life insurance benefits |
| 10 | at FATCO as she had at Equity Title? |
| 11 | MR. McLAUGHLIN:  Objection.  No foundation. |
| 12 | THE WITNESS:  I don't know. |
| 13 | Q    (BY MS. WOOD)  Well, you know the benefits |
| 14 | changed, don't you? |
| 15 | A    Yeah.  So no. |
| 16 | Q    Now, how many office managers in Equity Title |
| 17 | have a noncompete agreement -- I mean at FATCO? |
| 18 | MR. McLAUGHLIN:  Objection to form.  And no |
| 19 | foundation. |
| 20 | THE WITNESS:  I don't know. |
| 21 | Q    (BY MS. WOOD)  In your position as head of |
| 22 | human resources for FATCO, did you ever ask an office |
| 23 | manager to sign a noncompete? |
| 24 | A    Yes. |
| 25 | Q    Who? |

```
 1      A     I don't recall.
 2      Q     Under what circumstances?
 3      A     Usually surrounding some compensation change.
 4      Q     Okay.
 5      A     Bonus restructure, something like that.
 6      Q     Okay.  Did that ever happen to Ms. Carrell?
 7      A     I don't recall.
 8      Q     Would you consider Ms. Carrell to be a unique,
 9   extraordinary, gifted office manager?
10            MR. McLAUGHLIN:  Objection to form.
11            THE WITNESS:  She was very good.
12      Q     (BY MS. WOOD)  Was she unique and
13   extraordinary?
14            MR. McLAUGHLIN:  Objection to form.
15            THE WITNESS:  Depends who you compare her to.
16      Q     (BY MS. WOOD)  Who would you compare her to?
17      A     Other managers in Salt Lake.  She was one of
18   the best.
19      Q     Was she unique and extraordinary?
20      A     No.
21      Q     Okay.
22            MR. McLAUGHLIN:  Mary Anne, are you done with
23   this one?
24            MS. WOOD:  No.
25            THE WITNESS:  We are not done with it?
```