IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY and FIRST AMERICAN TITLE COMPANY, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>NORTHWEST TITLE INSURANCE AGENCY, LLC; MICHAEL SMITH; JEFF WILLIAMS; and KRISTI CARRELL,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [385] RENEWED MOTION FOR SUMMARY JUDGMENT; GRANTING RESERVED PORTION OF [163] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15 cv 229 DN<br><br>District Judge David Nuffer |

Defendants filed a Renewed Motion for Summary Judgment.[1] Plaintiffs responded in opposition.[2] Defendants replied to that opposition.[3] In this motion, defendants renew their request to dismiss the tortious interference and the conspiracy causes of action against Northwest because of First American's voluntary dismissal of five causes of action. This motion is a renewal of the portion of Northwest's motion for summary judgment[4] which sought adjudication of all claims. Decision was reserved on these claims.[5]

---

[1] Renewed Motion for Summary Judgment, and Motion for Expedited Briefing Schedule (Renewed Motion), docket no. 385, filed November 18, 2016.

[2] Plaintiff's Opposition to Renewed Motion for Summary Judgment (Opposition), docket no. 394, filed November 23, 2016.

[3] Reply in Support of Renewed Motion for Summary Judgment (Reply), docket no. 404, filed November 25, 2016.

[4] Motion for Summary Judgment and Memorandum in Support [163 Motion for Summary Judgment, docket no. 163, filed April 19, 2016.

[5] *See* Memorandum Decision and Order Mooting in Part and Denying in Part Defendants' [163] Motion for Summary Judgment; Granting Partial Summary Judgment Under Rule 56(f); But Reserving Ruling on Some Issues Under 56(f); and Denying Defendants' [309] Motion to Reconsider (Order on the [163] Motion) at 55, docket no. 393, entered November 23, 2016 ("56(f) ruling is reserved for tortious interference of contracts (Causes of Action IV, V), tortious interference with economic relations (Cause of Action X), and conspiracy (Cause of Action XI).").

In the Renewed Motion, the defendants argue that because First American voluntarily dismissed numerous counts,[6] the "remaining claims fail as a matter of law with respect to Northwest."[7] After voluntarily dismissing the other causes of action, "the only remaining claims in this lawsuit against Northwest are claims for tortious interference (Counts IV and X) and Conspiracy (XI)."[8] And Northwest says these claims now fail "because claims of tortious interference and civil conspiracy both require proof of a separate wrongful act to meet the elements of the respective claim."[9] This order will address the Renewed Motion and the portion of the [163] Motion for Summary Judgment relating to Counts V and XI for the Individual Defendants. The issues raised in the Renewed Motion are almost purely legal. The Undisputed Material Facts in the Order on the [163] Motion provide the general factual background.

## DISCUSSION

### 1.  The claims against Northwest for tortious interference survive.

For the reasons stated in the defendants' Renewed Motion and Reply,[10] inducing a party to breach a valid non-compete or non-solicitation agreement cannot be the improper means required for a tortious interference claim. Since inducing a party to breach an agreement is captured in the tortious interference claim itself,[11] it would be circular to allow it to satisfy the

---

[6] Counts VII–VIII for misappropriation of trade secrets; Count IX for unfair competition; Count XII for conversion; and Count XIII for violation of the Computer Fraud and Abuse Act.

[7] Renewed Motion at i.

[8] *Id.*

[9] *Id.*

[10] Renewed Motion at 5–6; Reply at 8–12.

[11] *Blackmore/Cannon Dev. Co., LLC v. U.S. Bancorp d/b/a U.S. Bank*, 2:08-CV-370 CW, 2010 WL 1816275, at *10 (D. Utah May 3, 2010).

improper means element of the claim.[12] The improper means must be "independently actionable conduct."[13]

First American cites *Harris Group, Inc. v. Robinson* to support its argument that "Northwest's conduct falls well within the definition of tortious intentional interference."[14] But the jury in *Harris* found that employees were guilty of conversion and also breach of fiduciary duty.[15] Here First American has voluntarily dismissed its conversion claim. Thus, the only remaining cause of action that would satisfy the improper means requirement is the sixth cause of action against Smith for breach of fiduciary duty. For Northwest to be held liable for this breach, significant questions of fact remain. Specifically, First American must prove that Smith breached his fiduciary duty to First American *while* acting as an agent for Northwest *while* tortiously interfering with First American's contracts or economic relations. This string of contingencies relies on too many facts that are not undisputed. Those narrow questions will remain for the jury.

2. **The tortious interference claim against Smith survives; the claim against Williams and Carrell is dismissed.**

As stated above, there must be "independently actionable conduct" to satisfy the improper means analysis for the Individual Defendants. No tort remains against Williams and Carrell to satisfy this requirement. First American cites *Systemic Formulas v. Kim*[16] for the proposition that violating a non-compete agreement may constitute improper means. In *Systemic*

---

[12] *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1199 (Co. Ct. App. 2009). It would be the same as saying tortiously interfering with contracts by tortiously interfering with contracts (i.e. the improper means).

[13] *Id.* at 1198; *see also Peoples Sec. Life Ins. Co. v. Hooks*, 367 S.E.2d 647, 649-51 (N.C. 1988) (emphasizing the requirement of having independent actionable conduct in light of available contractual remedies).

[14] Opposition at 10.

[15] *Harris*, 209 P.3d at 1199-1200.

[16] No. 1:07-cv-00159-TC-DN, 2010 WL 3522083 (D. Utah September 3, 2010).

*Formulas*, however, the court stated that a breach alone is not sufficient—the plaintiff must show a breach coupled with a motivation to injure the former employer:

> A breach of contract committed for the immediate purpose of injuring the other contracting party is an improper means that will satisfy the . . . improper means element of the cause of action for intentional interference with economic relations. If Dr. Kim committed a breach of his employment agreement, and if he did so *not just to obtain relief from his contractual obligation, but also to achieve a larger advantage by injuring Systemic* in a manner not compensable merely by contract damages, Systemic may have a claim for interference with prospective economic relations.[17]

The Individual Defendants breached their non-competition or non-solicitation agreements to obtain their own business opportunity.[18] But even if First American were able to show that the Individual Defendants breached their agreements with a desire to injure First American, that would not meet the requirements for demonstrating tortious interference. *Systemic* was decided before *Eldridge v. Johndrow*.[19] In *Eldridge*, the Utah Supreme Court pared down the tortious interference analysis to only include improper means, thereby excluding liability when the alleged tortfeasor had no more than an improper purpose.[20] *Systemic*'s criterion of "desiring to achieve a larger advantage by injuring" is an alternate articulation of the improper-purpose doctrine. Thus breaching or inducing breach of a contract with improper purpose cannot be considered a possible improper means employed by the Individual Defendants. Without the possibility of breaching or inducing a breach as the improper means, there is no independent tort that satisfies the improper means requirement for Williams and Carrell.

---

[17] *Id.* at *3 (emphasis added).

[18] *See* Memorandum Decision and Order Granting in Part and Denying in Part First American's Motion for Partial Summary Judgment (Order on the Motion for Partial Summary Judgment) at 28, docket no. 302, entered October 18, 2016.

[19] 345 P.3d 553 (Utah 2015).

[20] *Id.* at 565 ("We therefore conclude that the improper-purpose doctrine has not worked well in practice, and that more good than harm will come by departing from precedent. It should therefore be abandoned.") (internal citations and quotation marks omitted).

For Smith, the alleged breach of his fiduciary duty to First American may constitute the improper means for tortiously interfering with First American's employment contracts. Among other things, First American must show that Smith knew about the other employees' contracts. That question will be decided by the jury.

### 3.  Issues of material fact remain on First American's civil conspiracy claim.

In Count XI,[21] First American alleges that the defendants "conspired to create a business to compete with First American, solicit or hire away as many of First American's employees as possible, and take from First American existing and future business opportunities."[22]

"To prove civil conspiracy, five elements must be shown: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[23]

The defendants argue that First American fails to satisfy the first element for the conspiracy claim since the Individual Defendants are not able to conspire with each other or with Northwest because it would amount to a conspiracy of one.[24] This issue, however, is fact intensive because it is not clear when the Individual Defendants became Northwest's agents. If the jury determined that the Individual Defendants were agents for Northwest from its inception and that they were acting within the scope of that agency relationship,[25] then defendants would prevail on this claim. Northwest would not be able to conspire with itself.

---

[21] Complaint ¶¶ 207–12.

[22] *Id.* ¶ 208.

[23] *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993) (internal quotation marks omitted); *see also* 15A C.J.S. Conspiracy § 1 (collecting cases) ("A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.").

[24] Defendants' 56(f) Response at 19–20.

[25] *See* Opposition at 14–16 (collecting cases).

First American counters this possibility with a hypothetical: "[I]f Defendants' argument were correct, any employee would have a license to conspire against his/her employer just so long as he/she gained an ownership interest in, or dual employment relationship with, another coconspirator. Obviously, that is not and cannot be the law."[26] From the cases presented and additional research, First American's hypothetical does seem to be the law: If the employee "gained" an ownership interest or employment status at or before the inception of the conspiratorial relationship, then the agents of the organization cannot be considered separate from the organization for purposes of conspiracy. The hypothetical is not applicable, however, if the employee conspired before becoming an agent or if some special legal rule applies when alleged conspirators have concurrent conflicting positions. If the jury determines that the Individual Defendants were not agents of Northwest or acted outside the scope of their agency with Northwest, then First American may prevail. Therefore, the fact questions of when the Individual Defendants became agents of Northwest are left to the jury.

The defendants also argue that "[b]y voluntarily dismissing its tort claims against Northwest, FATCO can no longer meet the elements of a civil conspiracy claim against Northwest."[27] Specifically, defendants argue, "[a]fter dismissing its claim for unfair competition, FATCO's 'conspiracy' claim fails as a matter of law."[28]

"The fourth element [of a conspiracy] is of particular note as it requires a civil conspiracy plaintiff to prove that *one of the* conspirators actually committed an unlawful act—referred to as

---

[26] Opposition at 16.

[27] Renewed Motion at 1.

[28] Renewed Motion at 2.

the underlying tort. Where a civil conspiracy is established under the common law, *each member of the conspiracy is liable for the acts of his or her coconspirators.*"[29]

The underlying unlawful, overt acts that would provide the basis for a conspiracy claim in this case may be one or multiple of the following causes of action: Counts IV (tortious interference with contract by Smith), V (tortious interference with contract by Northwest), X (tortious interference with business relations by Northwest), or VI (Smith's breach of fiduciary duty).

As questions of fact abound for these underlying claims and all elements of civil conspiracy, summary judgment on this claim is precluded.

## ORDER

IT IS HEREBY ORDERED that the Renewed Motion for Summary Judgment, and Motion for Expedited Briefing Schedule and Consideration[30] is GRANTED IN PART by dismissal of the tortious interference claim against Williams and Carrell,[31] and DENIED IN PART by denial of all other relief sought.

This order resolves all outstanding issues arising in the [163] Motion for Summary Judgment[32] which should now be terminated.

Signed November 27, 2016.

BY THE COURT

David Nuffer
United States District Judge

---

[29] *Zero Down Supply Chain Solutions, Inc. v. Global Transportation Solutions, Inc.*, no. 2:07-cv-400 TC, 2008 WL 4642975, at *8 (D. Utah Oct. 17, 2008) (emphasis added).

[30] Docket no. 385, filed November 18, 2016.

[31] Reserved in the Order on the [163] Motion at 55.

[32] Motion for Summary Judgment and Memorandum in Support, docket no. 163, filed April 19, 2016.