IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY and FIRST AMERICAN TITLE COMPANY, LLC, <br><br>                Plaintiffs, <br><br> v. <br><br> NORTHWEST TITLE INSURANCE AGENCY, LLC; MICHAEL SMITH; JEFF WILLIAMS; and KRISTI CARRELL, <br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [520] MOTION FOR NEW TRIAL, DENYING [492] MOTION FOR ATTORNEYS' FEES, AND GRANTING IN PART AND DENYING IN PART [493] MOTION FOR ATTORNEYS' FEES** <br><br> Case No. 2:15-cv-00229-DN <br><br> District Judge David Nuffer |

Defendants Michael Smith, Jeffrey Williams, and Kristi Carrell (the "individual defendants"), with defendant Northwest Title Insurance Agency, LLC, move under Federal Rule of Civil Procedure 59 for a new trial (Motion for New Trial).[1] Plaintiffs First American Title Insurance Company and First American Title Company, LLC, (First American) respond in opposition.[2] Defendants did not reply in support of their motion.

---

[1] Docket no. 520, filed January 31, 2017.

[2] (Opposition to Motion for New Trial), docket no. 534, filed February 14, 2017.

First American[3] and Defendants[4] filed motions for attorneys' fees. They both responded in opposition to each other's motion.[5] And they both reply in support of their own motion.[6]

Because the defendants were accorded a fair trial and the jury's decision was sound, the Motion for New Trial is DENIED.

Because First American is the prevailing party, First American's Motion for Attorneys' Fees is GRANTED IN PART and DENIED IN PART and the Defendants' Motion for Attorneys' Fees is DENIED.

**Table of Contents**

Background ................................................................................................................................. 3
Discussion ................................................................................................................................. 9
    Defendants' motion for a new trial is denied. ................................................................. 9
        1.     Defendants misstate the law regarding improper means. ......................... 11
        2.     There was no error in allowing First American to introduce evidence of defendants taking confidential information. ............................................. 13
        3.     Defendants were not prejudiced by the pretrial ruling and the jury instruction that First American performed its duties under the Equity agreements. ............................................................................................. 14
        4.     The remaining, miscellaneous arguments do not merit a new trial. ......... 15
    Defendants' motion for attorneys' fees is denied, and First American's motion for attorneys' fees and costs is granted in part and denied in part. ............................. 15
        1.     First American is entitled to attorneys' fees for Smith's breach of fiduciary duty and for Smith's and Williams's breaches of contract; the defendants are not entitled to attorneys' fees based on the voluntary dismissal of the CIIA or because it was ruled Smith did not breach his non-compete agreement. ....................................................................................................... 17
        2.     First American is entitled to most of the attorneys' fees it requests. ........ 19
        3.     First American is entitled to its costs. ....................................................... 26
Order ...................................................................................................................................... 29

---

[3] Plaintiffs' Motion for Award of Attorneys' Fees, Costs and Expenses (First American's Motion for Attorneys' Fees), docket no. 493, filed January 17, 2017.

[4] Motion for Attorney Fees and Memorandum in Support (Defendants' Motion for Attorneys' Fees), docket no. 492, filed January 17, 2017.

[5] Opposition to Plaintiffs' Motion for Award of Attorneys' Fees, Costs and Expenses (Defendants' Opposition to Motion for Attorneys' Fees), docket no. 527, filed February 3, 2017; Plaintiffs' Memorandum in Opposition to Defendants' Motion for Attorney Fees (First American's Opposition to Motion for Attorneys' Fees), docket no. 518, filed January 31, 2017.

[6] Plaintiffs' Reply in Support of Motion for Award of Attorneys' Fees, Costs and Expenses (Plaintiffs' Reply Supporting Motion for Attorneys' Fees), docket no. 536, filed February 17, 2017; Reply in Support of Motion for Attorney Fees (Defendants' Reply Supporting Motion for Attorneys' Fees), docket no. 535, filed February 17, 2017.

## BACKGROUND

First American originally brought three claims for breach of contract against the individual defendants;[7] two claims for tortious interference with contract against all defendants;[8] one claim for breach of fiduciary duty against Smith;[9] two claims for misappropriation of trade secrets against all defendants;[10] one claim for unfair competition against all defendants;[11] one claim for tortious interference with economic relations against Northwest;[12] one claim for civil conspiracy against all defendants;[13] one claim for conversion against all defendants;[14] and one claim for violation of the Computer Fraud and Abuse Act against the individual defendants.[15] All told, First American brought 13 causes of action against the defendants.

First American voluntarily dismissed—in part or in their entirety—many of those claims. First American dismissed, with defendants' stipulation, the claims for misappropriation of trade secrets, unfair competition, conversion, and violation of the Computer Fraud and Abuse Act.[16] The parties, however, "preserve[d] their respective arguments regarding the admissibility of

---

[7] Complaint ¶¶ 126–46, docket no. 2, filed February 3, 2015.

[8] *Id.* ¶¶ 147–168.

[9] *Id.* ¶¶ 169–75.

[10] *Id.* ¶¶ 176–91.

[11] *Id.* ¶¶ 192–99.

[12] *Id.* ¶¶ 200–06.

[13] *Id.* ¶¶ 207–12.

[14] *Id.* ¶¶ 213–17.

[15] *Id.* ¶¶ 218–23.

[16] Stipulated Motions to Dismiss Certain Claims Against Defendants, docket no. 383, filed November 18, 2016.

evidence, the scope and application of Utah Uniform Trade Secret Act preemption, if any, and all other legal claims."[17]

For the breach of contract claims, First American dismissed the portion of the claims based on the Confidential Information and Inventions Agreement (CIIA).[18] The defendants responded that they did not object to dismissing those portions of the breach of contract claims based on the CIIA, but that they did "not waive their arguments regarding the admissibility of evidence, the scope and application of preemption under the Utah Uniform Trade Secret Act, and all other legal claims for attorney fees as the prevailing party."[19]

Various pretrial rulings also pared down First American's claims and the triable issues. The Memorandum Decision and Order Granting in Part and Denying in Part First American's Motion for Partial Summary Judgment[20] found that

> [t]he rights to enforce the Individual Defendants' employment agreements transferred to First American by operation of law as part of the merger. Jeff Williams and Kristi Carrell breached the non-compete provisions of their employment agreements. Mike Smith did not. And Jeff Williams and Mike Smith breached the non-solicitation provisions of their employment agreements.[21]

The Memorandum Decision and Order Mooting in Part and Denying in Part Defendants' [163] Motion for Summary Judgment; Granting Partial Summary Judgment Under Rule 56(f); but Reserving Ruling on Some Issues Under 56(f); and Denying Defendants' [309] Motion to Reconsider[22] found, in relevant part, that

---

[17] *Id.* at 2.

[18] Motion to Dismiss Breach of Contract Claims Related to the CIIA Against Individual Defendants, docket no. 407, filed November 25, 2016.

[19] Response to Plaintiffs' Motion to Dismiss Breach of Contract Claims Under the CIIA at 2, docket no. 411, filed November 26, 2016.

[20] (Order on Partial Summary Judgment), docket no. 302, entered October 18, 2016.

[21] *Id.* at 29.

[22] (Order on Summary Judgment), docket no. 393, entered November 23, 2016.

First American did not materially breach the Individual Defendants' Equity
employment agreements;

No impermissible expansion of geographic scope bars First American's
enforcement of the employment agreements;

Duration, nature of interest, and Individual Defendants' positions do not render
the non-competition provisions of the employment agreements
unenforceable;

. . . .

The Employee Handbook and the Code of Ethics and Conduct are unilateral,
enforceable contracts that are not illusory[23]

The Memorandum Decision and Order Granting in part and Denying in part [385]
Renewed Motion for Summary Judgment; Granting Reserved Portion of [163] Motion for
Summary Judgment[24] found that First American's claims against Northwest for tortious
interference survived summary judgment, but with an important caveat: "First American must
prove that Smith breached his fiduciary duty to First American *while* acting as an agent for
Northwest *while* tortiously interfering with First American's contracts or economic relations."[25]
It also dismissed the tortious interference claim against Williams and Carrell.[26]

Both First American and the defendants filed numerous motions in limine. Only a few are
relevant to the Motion for New Trial.

Defendants moved to limit First American "from introducing any damages evidence
other than that of its damages expert and his report, including restricting the introduction" of a
slideshow.[27] This motion was denied.[28]

---

[23] *Id.* at 54–55.

[24] (Order on Renewed Summary Judgment), docket no. 416, entered November 27, 2016.

[25] *Id.* at 3.

[26] *Id.* at 7.

[27] Defendants' Motion in Limine to Preclude Introducing Certain Damages Evidence at 2, docket no. 314, October
31, 2016.

[28] Docket Text Order denying 314 motion in Limine, docket no. 368, entered November 14, 2016.

Defendants moved to preclude First American from "introducing its three exhibits each titled 'First American Title Employees Taken.'"[29] This motion was denied.[30]

Defendants moved to "exclude any claims or information on First American Title Insurance Company's . . . damages that exceed the one-year period of March 9, 2016–March 9, 2017."[31] After making certain findings, this motion was denied.[32]

Defendants moved to exclude First American "from offering any evidence, argument, or a jury instruction relating to Northwest Title 'taking' FATCO customers."[33] This motion was denied.[34]

Defendants moved to exclude "the testimony of Richard S. Hoffman, the damages expert designated by Plaintiffs."[35] This motion was denied.[36]

And finally, defendants moved to preclude First American "from introducing its two 'Timeline' exhibits."[37] This motion was denied.[38]

In addition to these pre-trial motions, First American and defendants made numerous objections and oral motions at trial.

---

[29] Defendants' Motion in Limine to Preclude FATCO from Introducing Its Three Exhibits Titled "First American Title Employees Taken," docket no. 318, filed October 31, 2016.

[30] Docket Text Order denying 318 Motion in Limine, docket no. 371, entered November 14, 2016.

[31] Defendants' Motion in Limine Limiting Evidence, Argument, or Jury Instruction Regarding Damages at 2, docket no. 319, filed October 31, 2016.

[32] Docket Text Order denying 319 Motion in Limine, docket no. 438, entered December 7, 2016.

[33] Defendants' Motion in Limine to Exclude Any Evidence, Argument, or Jury Instruction in Support of a Claim Based on Taking Customers, docket no. 321, filed October 31, 2016.

[34] Docket Text Order denying 321 Motion in Limine, docket no. 372, entered November 14, 2016.

[35] Docket no. 265, filed August 26, 2016.

[36] Memorandum Decision and Order Granting in Part and Denying in Part [265] Motion in Limine to Exclude Report [sic] and Testimony of Richard S. Hoffman, docket no. 409, entered November 26, 2016.

[37] Defendants' Motion in Limine to Preclude FATCO from Introducing its Two 'Timeline' Exhibits, docket no. 323, filed October 31, 2016.

[38] Docket Text Order denying 323 Motion in Limine, docket no. 373, entered November 14, 2016.

In the first phase of trial, the jury was asked to determine the following:

1. Whether the individual defendants "received and had knowledge of the relevant terms" of the Employee Handbook and Code of Ethics.[39] The jury answered "yes" for all defendants.[40]
2. Whether, "by clear and convincing evidence," First American could not enforce "the Equity employment agreement[s] against" the individual defendants due to abandonment.[41] The jury answered "no" for all defendants.[42]
3. Whether, "by clear and convincing evidence," First American could not enforce "the Equity employment agreement[s] against" Smith and Carrell due to equitable estoppel.[43] The jury answered "no" for both.[44]
4. Whether the individual defendants had breached other terms of the contracts that were enforceable against them.[45] The jury was instructed that Smith had breached his non-solicitation provision;[46] Williams had breached his non-solicitation and non-compete provisions;[47] and Carrell had breached her non-compete provision.[48] The jury answered "yes" for all defendants.[49]
5. What amount of damages would compensate First American for the injuries it suffered because of the individual defendants' breaches of enforceable contracts.[50] The jury answered "$500,000" for Smith, "$50,000" for Williams, and "$50,000" for Carrell.[51]
6. Whether Smith breached his fiduciary duty to First American while he was employed by First American.[52] And if so, whether and for how much First American was damaged by that breach.[53] The jury answered "yes" that Smith

---

[39] Special Verdict – Phase I at 2–4, docket no. 470, entered December 16, 2016. The verdict form included instructions for the jury to skip questions if it answered "no" to questions upon which subsequent questions were predicated. For readability, this summary of the jury's verdict omits these instructions.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 2, 4.

[44] *Id.*

[45] *Id.* at 2–4.

[46] *Id.* at 2.

[47] *Id.* at 3.

[48] *Id.* at 4.

[49] *Id.* at 2–4.

[50] *Id.*

[51] *Id.*

[52] *Id.* at 5.

[53] *Id.*

breached his duty and that First American was damaged by that breach. The jury answered "$600,000" for how much First American was damaged.[54]

7. Whether, "by clear and convincing evidence," Smith's breach of his fiduciary duty was "willful and malicious, or in knowing and reckless indifference toward, and disregard of, the rights of First American."[55] The jury answered "yes."[56]

8. Whether Smith tortiously interfered with First American contracts and if so, whether and for how much First American was damaged.[57] The jury answered "yes" to all and that First American was damaged by "$525,000."[58]

9. Whether, "by clear and convincing evidence" Smith's "tortious interference with contracts was willful and malicious, or in knowing and reckless indifference toward and disregard of, the rights of First American."[59] The jury answered "yes."[60]

10. Whether Smith was "acting as an agent of Northwest Title when he breached his fiduciary duty to First American."[61]

11. Whether Northwest tortiously interfered with First American contracts and if so, whether and for how much First American was damaged.[62] The jury answered "yes" to all and that First American was damaged by "$1,000,000."[63]

12. Whether, "by clear and convincing evidence" Smith's "tortious interference with contracts was willful and malicious, or in knowing and reckless indifference toward and disregard of, the rights of First American."[64] The jury answered "yes."[65]

13. Whether Northwest "tortiously interfered with First American's business relations."[66] The jury answered "no."[67]

14. Whether, "by clear and convincing evidence," the individual defendants "engaged in a Civil Conspiracy against First American before they were

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 5–6.

[58] *Id.*

[59] *Id.* at 6.

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 7.

[67] *Id.*

agents of Northwest Title."[68] The jury answered that only Smith had so engaged.[69]

15. Whether "Northwest Title engage[d] in Civil Conspiracy against First American with one or more of the above listed individuals while that individual was not an agent of Northwest."[70] The jury answered "no."[71]

Between the first and second phase of trial, the defendants filed two motions. One moved to set aside the verdict because, defendants argued, the jury awarded double recovery.[72] And the other moved for a mistrial because, defendants argued, the court failed to instruct the jury of the proper standard for punitive damages.[73] Both were denied.[74]

In the second phase of trial, the jury was asked to determine "by clear and convincing evidence," the amount of punitive damages for Smith and Northwest.[75] The jury answered that Northwest was liable for "$500,000" for its tortious interference with First American's contracts.[76]

## DISCUSSION

**Defendants' motion for a new trial is denied.**

Federal Rule of Civil Procedure 59(a)(1) states that a court may grant a new trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an

---

[68] *Id.*

[69] *Id.*

[70] *Id.* at 8.

[71] *Id.*

[72] Motion to Set Aside Verdict for Double Recovery, docket no. 471, filed December 17, 2016.

[73] Motion to Set Aside Verdict for Failure to Instruct and Improper Instruction or for Mistrial, docket no. 474, filed December 19, 2016.

[74] Order Denying the Motions to Set Aside Verdict, docket no. 475, entered December 19, 2016.

[75] Special Verdict Phase II at 1, docket no. 480, entered December 20, 2016.

[76] *Id.*

action at law in federal court." The 10th Circuit stated that "[a] decision to grant a new trial involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself."[77] "A new trial may be appropriate where [1] the jury verdict is against the weight of the evidence, [2] the damages are excessive, [3] a party was prejudiced by erroneous evidentiary rulings, or [4] the trial was not fair to the moving party."[78] The defendants seek a new trial on all four grounds.[79] The bulk of the motion, however, focusses on and relates to pre-trial rulings. Specifically, defendants argue the following:

1. That the Individual Defendants were not jointly employed by Equity Title and First American.[80]
   a. Addressed in Order on Partial Summary Judgment at 17.
2. That the terms of the First American Employee Handbook and the Code of Ethics were not binding contracts on the Individual Defendants.[81]
   a. Addressed in Order on Summary Judgment at 45–50.
3. That First American had dismissed all claims that would serve as wrongful means in its claim for tortious interference.[82]
   a. Addressed in Order on Renewed Summary Judgment at 2–4.
4. That "[t]he Court gave overly-broad instructions on Defendant Smith's duties as a fiduciary and a lawyer, and refused instructions on legal limits or clarification of those duties."[83]
   a. Addressed in Order on Summary Judgment at 51–54.
5. That First American failed to disaggregate damages by claim and by individual defendant.[84]
   a. Addressed in Order on Summary Judgment at 25–26; Memorandum Decision and Order Granting in Part and Denying in Part [265] Motion in Limine to Exclude Report [sic] and Testimony of Richard S. Hoffman at 3.

---

[77] *Weese v. Schukman*, 98 F.3d 542, 549 (10th Cir. 1996).

[78] *Braun v. Medtronic Sofamor Danek, Inc.*, 141 F. Supp. 3d 1177, 1192 (D. Utah 2015).

[79] Motion for New Trial at i–ii.

[80] *Id.* at 1.

[81] *Id.* at 2.

[82] *Id.*

[83] *Id.* at 4.

[84] *Id.* at 7.

6. That the jury awarded duplicative damages.[85]
   a. Addressed in Order Denying the Motions to Set Aside Verdict at 2–3.
7. That the court "omitted any instruction that willful and malicious conduct, or knowing and reckless indifference must also be shown by clear and convincing evidence."[86]
   a. Addressed in Order Denying the Motions to Set Aside Verdict at 3.
8. That "the Court allowed FATCO, over objections, to introduce evidence of angry comments made by Mike Smith after he left FATCO and had been sued, as evidence of malice."[87]
   a. Addressed in Order Denying the Motions to Set Aside Verdict at 3–4.

The above arguments will not be analyzed further. Defendants' facts and arguments are not new. In fact, a significant amount of argument is made by incorporating previous briefing.[88]

The defendants' remaining arguments are treated below.

**1. Defendants misstate the law regarding improper means.**

Much of defendants' Motion for New Trial revolves around a misunderstanding of what constitutes an improper means for tortious interference of an at-will employment contract.[89] Defendants argue that "Utah law requires that, in any cause of action of tortious interference with an at-will employment contract, the 'improper means' must be aimed at the third-party, and not at the plaintiff."[90] Accordingly, because Smith did not owe the at-will employees a fiduciary duty, defendants argue, the series of contingencies articulated in the Order on Renewed Summary Judgment cannot be satisfied. That is, even if "First American . . . prove[d] that Smith breached his fiduciary duty to First American *while* acting as an agent for Northwest"[91] he could

---

[85] *Id.* at 8–9.

[86] *Id.* at 10.

[87] *Id.* at 10.

[88] *Id.* at 1, 2, 5, and 8.

[89] *Id.* at 2, 8–9.

[90] Motion for New trial at 2–3.

[91] Order on Renewed Summary Judgment 3.

not have tortiously interfered with First American's contracts because his fiduciary duty was with First American, not its at-will employees.

For this argument, defendants rely on *SliceX, Inc. v. Aeroflex Colorado Springs, Inc.*[92] In *SliceX*, the court stated that "mere persuasion and an offer of better terms does not give rise to a claim for tortious interference with contract claim" because "the employer has no future expectancy in the continuation of the contract."[93] The court in *SliceX* granted summary judgment on the tortious interference claim because the plaintiffs failed to show that the defendants directed the improper means at the employees. The court, relying on the Restatement (Second) of Torts § 768, held that causing termination of an at-will contract is not actionable unless the defendant uses improper means at inducing the at-will employees to terminate their employment. *SliceX* and the Restatement section are limited to interference causing *termination*.

By contrast, First American did not focus on the fact of *termination* as the basis for its tortious interference claims. Instead, it focused first on defendants' tortious interference with the individual defendants' *non-compete agreements*;[94] and second, on whether the defendants caused other First American employees to breach their employment contracts while they were still within First American's employ.[95]

An employer has a future expectancy in a non-compete agreement. A non-compete agreement like the one in the individual defendants' Equity contracts is nothing without future application. And an employer has a valid expectation that its employees, at-will or not, will abide by valid non-compete agreements and keep any present obligations, i.e. contractual obligations

---

[92] No. 2:04-cv-615-TS, 2006 WL 1699694 (D. Utah June 15, 2006).

[93] *Id.* at *3.

[94] Complaint ¶ 151.

[95] *Id.*

that impose duties while still under the plaintiff-employer's employ. The Restatement (Second) of Torts states that if a contract is at-will, "[u]ntil [the employee or employer] has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it."[96]

Therefore, *SliceX* is not applicable because it focused on the fact of termination. The jury found that Smith's breach of fiduciary duty was the improper means that caused the at-will employees to breach their then-present contractual obligations as employees at First American and later their contractual obligations to not solicit and not compete. Unlike *SliceX*, the focus was not on those at-will employees terminating their employment with First American. Therefore, the jury's verdict on tortious interference with contract is not contrary to law

## 2. There was no error in allowing First American to introduce evidence of defendants taking confidential information.

Defendants argue that the jury was able to find "both breach of fiduciary duty and tortious interference on impermissible grounds" because First American "was allowed to introduce evidence of alleged taking of confidential documents."[97] Defendants argue that introducing any evidence of taking confidential documents requires an instruction "that causes of action for breach of fiduciary duty and tortious interference based upon the taking of allegedly confidential documents are preempted by the Utah Trade Secrets Act."[98]

That instruction is too broad. First American correctly points out that its "arguments were not for claims relating to stolen documents, but to provide the proof to support the elements of other claims."[99] Specifically, First American used the "evidence regarding confidential

---

[96] Restatement (Second) of Torts § 766 (comment g).

[97] Motion for New Trial at 4.

[98] *Id.*

[99] Opposition to Motion for New Trial at 19.

documents . . . [to] demonstrate[e] the timing of Defendants' actions, the plan and object of their conspiracy, and the intent element of their tortious actions."[100]

Therefore, the defendants were not prejudiced by omitting the instruction on the Utah Trade Secrets Act preemption.

### 3. Defendants were not prejudiced by the pretrial ruling and the jury instruction that First American performed its duties under the Equity agreements.

Defendants argue that the "jury was erroneously instructed that FATCO had performed all the terms of [the relevant contracts], even before trial was held on whether the contracts had been abandoned."[101] The instruction was a result of a pretrial ruling.[102]

The instruction in question states "First American performed its obligations under the Equity employment agreements."[103] It does not refer to all the contracts binding the defendants. It does not mention the Code of Ethics. It does not mention the Employee Handbook.

The instruction was correct. Defendants are correct that the instruction does not take their abandonment defense into account. But any harm this instruction could have caused was completely mitigated by Instruction No. 37 and the Special Verdict Form. Instruction no. 37 states, after providing the legal elements for abandonment: "If you find that the parties to an Equity employment agreement abandoned it, then the parties have no further obligation to do what they promised to do in that agreement."[104] And the Special Verdict Form asked the jury to respond yes or no to this question for each individual defendant: "Do you find by clear and convincing evidence that First American cannot enforce the Equity employment agreement

---

[100] *Id.*

[101] Motion for New Trial at 2.

[102] Order on Summary Judgment at 54.

[103] Instructions at 12, [docket no. 483](#), entered December 20, 2016.

[104] *Id.* at 40.

against [the individual defendant] due to abandonment?"[105] If the jury responded yes, they were instructed to proceed to the next cause of action. In short, abandonment was still very much on the table.

Therefore, the jury was properly instructed that if the contracts were abandoned the individual defendants were not liable for breach of contract.

### 4. The remaining, miscellaneous arguments do not merit a new trial.

The defendants make many more arguments.[106] They fail, however, to include either any citations to the record or legal analysis of prejudice by certain rulings or omissions. For some arguments, they fail to include both citations and analysis. It is not the court's obligation to make a litigant's arguments.[107]

Therefore, a new trial will not be granted on these bases.

### Defendants' motion for attorneys' fees is denied, and First American's motion for attorneys' fees and costs is granted in part and denied in part.

Defendants argue that there are two bases for awarding them attorneys' fees: (1) because the Confidential Information and Inventions Agreement (CIIA) was voluntarily dismissed with prejudice and it provided for prevailing party attorneys' fees;[108] and (2) because a pretrial ruling determined that Smith did not violate the non-competition provision of his Equity agreement and the agreement provided for prevailing party attorneys' fees.[109]

First American argues that "[p]ursuant to the contracts with Smith and Williams, and pursuant to Utah Supreme Court precedent, First American, as the prevailing party, is entitled to

---

[105] Special Verdict Phase I at 2–4.

[106] Motion for New Trial 13–15.

[107] *U.S. v. Davis*, 622 F. App'x. 758, 759 (10th Cir. 2015).

[108] Defendants' Motion for Attorneys' Fees at 2.

[109] *Id.*

its fees and costs in successfully prosecuting its breach of contract claims against Smith and Williams and its breach of fiduciary duty claim against Smith."[110]

Federal Rule of Civil Procedure 54(2)(B) requires a motion for attorneys' fees to

(i)      be filed no later than 14 days after the entry of judgment;
(ii)     specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
(iii)    state the amount sought or provide a fair estimate of it; and
(iv)     disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Local Rule DUCivR 54-2 states that

The motion must (i) state the basis for the award; (ii) specify the amount claimed; and, (iii) be accompanied by an affidavit of counsel setting forth the scope of the effort, the number of hours expended, the hourly rates claimed, and any other pertinent supporting information that justifies the award.

"In diversity litigation this court applies state law with respect to the allowance of attorney fees."[111] "The general rule in Utah, and . . . the traditional American rule, subject to certain exceptions, is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award."[112] "But breach of a fiduciary obligation is a well-established exception to the American rule precluding attorney fees in tort cases generally."[113] And "if [fees are] provided for by contract, the award of attorney fees is allowed only in accordance with the terms of the contract."[114]

Smith's and Williams's Equity employment agreements state:

---

[110] First American's Motion for Attorneys' Fees at 2.

[111] *Matter of King Resources Co.*, 651 F.2d 1349, 1353 (10th Cir. 1981). Though jurisdiction was originally based on subject matter and diversity jurisdiction, First American voluntarily dismissed its claim for violation of the Computer Fraud and Abuse Act, which was the basis for subject matter jurisdiction. Complaint ¶ 8.

[112] *Kealamakia, Inc. v. Kealamakia*, 213 P.3d 13, 15 (Utah Ct. App. 2009).

[113] *Id.*

[114] *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988).

In the event any action be instituted by either party to interpret or enforce any of the terms or conditions of this Agreement, the prevailing party shall be entitled to recover attorney's, accountant's, and expert witness fees and costs.[115]

The Confidential and Inventions Agreement states:

In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Agreement (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party shall be awarded its reasonable attorney fees and costs and expenses incurred.[116]

In this case, judgment was entered against Smith for breach of his fiduciary duty,[117] judgment was entered against Smith and Williams for breach of contract,[118] including their Equity Agreements, and the portion of First American's claims for breach of contract based on the CIIA were voluntarily dismissed.[119]

The first question is whether one or both parties is entitled to attorneys' fees. Then the amount of any award must be determined.

**1. First American is entitled to attorneys' fees for Smith's breach of fiduciary duty and for Smith's and Williams's breaches of contract; the defendants are not entitled to attorneys' fees based on the voluntary dismissal of the CIIA or because it was ruled Smith did not breach his non-compete agreement.**

Defendants do not resist the fact of attorneys' fees for Williams's breach of contract and Smith's breach of fiduciary duty. They only argue that they are entitled to attorneys' fees for the voluntary dismissal of the CIIA's portion of the breach of contract causes of action.[120] And for Smith's breach of contract, defendants state

---

[115] Exhibit 1 Smith's Employment Agreement at 4, docket no. 493-1, filed January 17, 2017; Exhibit 2 Williams's Employment Agreement at 4, docket no. 493-2, filed January 17, 2017.

[116] Exhibit B Confidential and Information Inventions Agreement (CIIA) at 5, docket no. 2-3, field April 3, 2015.

[117] Special Verdict Phase I at 5.

[118] *Id.* at 2–3.

[119] Motion to Dismiss Breach of Contract Claims Related to the CIIA Against Individual Defendants, docket no. 407, filed November 25, 2016.

[120] Defendants' Motion for Attorneys' Fees *generally*.

Defendant Smith and Plaintiffs each prevailed, in part, on Plaintiffs' claim on the Smith Employment Agreement. Because the employment agreement provides for prevailing-party attorney fees, the Court must determine whether they are both prevailing parties, or whether the net judgment rule applies to make one or the other the prevailing party.[121]

Smith's and Williams's Equity Employment Agreement only allows for one prevailing party.[122] "Determining the prevailing party for purposes of awarding fees can oftentimes be quite simple . . . . Where a plaintiff sues for money damages, and plaintiff wins, plaintiff is the prevailing party; if defendant successfully defends and avoids adverse judgment, defendant has prevailed."[123] Defendants argue that this case "is not so simple."[124] But defendants did not "avoid[] adverse judgment."[125] Smith was found, as a matter of law, to have violated his Equity Employment Agreements.[126] He solicited First American's employees.[127] And the jury found that Smith was liable for $500,000 in compensatory damages for breaching valid contracts he had with First American.[128] Simply avoiding liability under one clause of a contract does not a prevailing party make.

Similarly, defendants are not the prevailing party for the claim encompassing the CIIA. Defendants cite three cases to support the argument that a "dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the

---

[121] Defendants' Reply Supporting Motion for Attorney Fees at 1.

[122] *R.T. Nielson Co. v. Cook*, 40 P.3d 1119, 1126 (Utah Ct. App. 2002) (collecting cases noting that provisions similar to those in Smith's and Williams's agreements permit only one prevailing party).

[123] *Id.* (citations and internal quotation marks omitted).

[124] Defendants' Reply Supporting Motion for Attorney Fees at 4.

[125] *R.T. Nielson Co.*, 40 P.3d at 1126.

[126] Order on Partial Summary Judgment at 29.

[127] *Id.* at 25–26.

[128] Special Verdict – Phase I at 2.

merits."[129] But in each of those cases, the plaintiff dismissed more than just one of the bases of a cause of action: The plaintiff dismissed the entire suit.[130] Here, the CIIA was merely one contract upon which First American's three breach of contract causes of action were based.[131] Dismissing it had minimal, if any, impact on the actual causes of action for breach of contract.

Therefore, First American is entitled attorneys' fees for Smith's breach of his fiduciary duty and for Smith's and Williams's breaches of contract. The defendants are not entitled to attorneys' fees for the voluntary dismissal of the portion of the breach of contract claims based on the CIIA. And the defendants are not entitled to attorneys' fees because it was ruled Smith did not breach his non-compete agreement.

### 2. First American is entitled to most of the attorneys' fees it requests.[132]

First, defendants argue that "FATCO fails to produce sufficient evidence to support the requested award."[133] And second, defendants argue that "an award, if any, should be reduced because FATCO's requested fees are unreasonable."

### First American provided sufficient evidence.

The defendants argue that First American failed to "satisfy its burden to properly allocate its requested fees or to establish that the required allocation is virtually impossible because the claims are inextricably tied together."[134] The defendants also argue that there is insufficient

---

[129] Defendants' Motion for Attorney Fees at 3.

[130] *Cobabe v. Crawford*, 780 P.2d 834, 835 (Utah Ct. App. 1989); *Cantrell v. International Brotherhood of Electrical Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 456 (10th Cir. 1995); *Schwarz v. Folloder*, 767 F.2d 125, 127 (5th Cir. 1985).

[131] Complaint ¶¶ 126–46.

[132] First American includes a request for an additional award for post-trial activity in its Plaintiffs' Reply Supporting Motion for Attorneys' Fees. Plaintiffs' Reply Supporting Motion for Attorneys' Fees at 10–11. This request is included in the analysis below. That is, First American is also entitled to attorneys' fees for post-trial work.

[133] Defendants Opposition to Motion for Attorneys' Fees at 1.

[134] *Id.* at 4.

evidence to "justify an award of fees for 29 lawyers and paraprofessionals at two different firms."[135]

First American responds that the defendants—ignoring the actual evidence First American presented in its Motion and supporting declarations—make what amounts to an argument for form over substance.[136] First American argues that its motion satisfies the lesser standard of "segregate[ing] its billing records and eliminat[ing] non-recoverable fees."[137] And regarding the overlap between claims, First American states:

> In this case, all causes of action, both compensable and non-compensable, related to one core set of facts: multiple high-level employees of First American with non-compete, non-solicitation, and non-disclosure agreements formed, organized, and operated a competing title insurance business in violation of their duties to First American.[138]

First American then states that "[t]here is more than sufficient overlap in facts and legal theories to justify First American requesting fees from work that supported multiple causes of action."[139]

Local Rule DUCivR 54-2 states that

> The motion [for attorneys' fees] must (i) state the basis for the award; (ii) specify the amount claimed; and, (iii) be accompanied by an affidavit of counsel setting forth the scope of the effort, the number of hours expended, the hourly rates claimed, and any other pertinent supporting information that justifies the award.

The Utah Supreme Court stated that the

> party requesting the attorney fees must categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there may be an entitlement to attorney fees had

---

[135] *Id.* at 5.

[136] Plaintiffs' Reply Supporting Motion for Attorneys' Fees at 3.

[137] *Id.*

[138] *Id.*

[139] *Id.*

the claims been successful, and (3) claims for which there is no entitlement to attorney fees.[140]

The Court continued that "[n]oncompliance with these requirements makes it difficult, if not impossible, for the trial court to award the moving party fees because there is insufficient evidence to support the award."[141] The Utah Court of Appeals elaborated on these three elements in *Brown v. David K. Richards & Co.*[142] The court held that as long as that "substance of the process reache[s] our desired result of separating recoverable from non-recoverable fees for consideration by the trial court," the motion and supporting documentation is sufficient.[143] In other words, a party seeking attorneys' fees may forego "allocating unrecoverable fees between category (2) and category (3)" listed above.[144]

There is, moreover, an exception to categorizing fees: "[A] party need not segregate its compensable and noncompensable claims if they sufficiently overlap and involve the same nucleus of facts."[145] If a party argues that this exception applies, they must provide more than conclusory, one-sentence assertions that the claims overlap.[146] Additionally, the noncompensable claims must "substantially overlap with compensable claims."[147]

---

[140] *Jensen v. Sawyers*, 130 P.3d 325, 349 (Utah 2005) (internal quotation marks omitted).

[141] *Id.*

[142] 978 P.2d 470 (Utah Ct. App. 1999).

[143] *Id.* at 474.

[144] *Id.*

[145] *Daynight, LLC v. Mobilight, Inc.*, 248 P.3d 1010, 1013 (Utah Ct. App. 2011)

[146] *Jensen*, 130 P.3d at 349.

[147] *Id.* at 348.

First American attaches two affidavits to its motion. Two are from Amy Sorenson of the Snell & Wilmer law firm[148] and the one is from Robert Ducatman of the Jones Day law firm.[149]

Sorenson states the number of hours expended,[150] the hourly rates claimed,[151] and the scope of the efforts.[152] Regarding allocating between compensable and non-compensable fees, Sorenson states that

> Due to the similarities in the underlying facts and legal issues, tasks undertaken by Snell & Wilmer, L.L.P. in prosecution of some of First American's other claims, were, for the most part, essential in not only prosecuting those claims, but also in prosecuting the breach of contract and breach of fiduciary duty claims.[153]

Sorenson then lists seven discrete items for which First American is not seeking fees.[154]

Ducatman also states the number of hours expended,[155] the hourly rates claimed,[156] and the scope of the efforts.[157] Regarding allocating between compensable and non-compensable fees, Ducatman states that "fees for which First American does not seek reimbursement can be identified on the bills as those for which the timekeeper description is entirely blacked out."[158]

---

[148] Declaration of Amy F. Sorenson in Support of First American's Motion for Award of Attorney Fees and Expenses (Sorenson Declaration), docket no. 493-3, filed January 17, 2017; Supplemental Declaration of Amy F. Sorenson in Support of First American's Motion for Award of Attorney Fees and Expenses, docket no. 536-3, filed February 17, 2017.

[149] Declaration of Robert P. Ducatman in Support of First American's Motion for Award of Attorney Fees and Expenses (Ducatman Declaration), docket no. 493-8, filed January 17, 2017.

[150] Sorenson Declaration ¶ 18.

[151] *Id.*

[152] *Id.* ¶¶ 21, 24–27.

[153] *Id.* ¶ 22.

[154] *Id.* ¶ 23.

[155] Ducatman Declaration ¶ 13.

[156] *Id.*

[157] *Id.* ¶ 17.

[158] *Id.* ¶ 12.

He later lists the six "general categories of work performed by Jones Day attorneys" for which First American is not seeking to recover attorneys' fees.[159]

First American's Motion and supporting declarations and exhibits satisfy both the allocation approach and the sufficient overlap approach. First American failed to do the exercise of categorizing "unsuccessful claims for which there may be an entitlement to attorney fees had the claims been successful[] and . . . claims for which there is no entitlement to attorney fees."[160] But the Sorenson and Ducatman declarations and attached exhibits achieve the "desired result of separating recoverable from non-recoverable fees for consideration."[161] And the motion, reply, and affidavits also satisfy the showing that the causes of action sufficiently overlap.

**First American's fees are mostly reasonable.**

Defendants argue that First American's "hours billed are not reasonable, the hourly rates are not reasonable, and the number of attorneys working on the case is not reasonable."[162] First American responds that the hours billed were necessary,[163] that the hourly rates—though in some cases high—are appropriate,[164] and that the attorneys' fees should not be reduced based on the amount of the recovery.[165]

To determine whether attorneys' fees are reasonable, courts may consider the following factors:

      a.   "the amount in controversy"; [166]

---

[159] *Id.* ¶ 19.

[160] *Jensen v. Sawyers*, 130 P.3d 325, 349 (Utah 2005) (internal quotation marks omitted).

[161] *Brown*, 978 P.2d at 474.

[162] Defendants Opposition to Motion for Attorneys' Fees at 6.

[163] First American's Reply to Motion for Attorneys' Fees at 7.

[164] *Id.* at 7–9.

[165] *Id.* at 9.

[166] *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988).

b. "the extent of services rendered";[167]
c. "the relationship of the fee to the amount recovered";[168] "
d. "the novelty and difficulty of the issues involved";[169] "
e. "the overall result achieved";[170]
f. "the necessity of initiating a lawsuit to vindicate the rights under the contract";[171]
g. "the difficulty of the litigation";[172]
h. "the efficiency of the attorneys in presenting the case";[173]
i. "the reasonableness of the number of hours spent on the case";[174]
j. "the fee customarily charged in the locality for similar services";[175]
k. "the amount involved in the case and the result attained";[176] and
l. "the expertise and experience of the attorneys involved."[177]

The Utah Supreme Court summarized those factors into four questions trial courts should answer to determine whether the attorneys' fees are reasonable:

> 1. What legal work was actually performed? 2. How much of the work performed was reasonably necessary to adequately prosecute the matter? 3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services? 4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?[178]

For the most part, First American's fees are reasonable. First, this case was complex.

There was extensive "legal work actually performed." Reviewing the docket, there were roughly

---

[167] *Id.*

[168] *Id.*

[169] *Id.*

[170] *Id.*

[171] *Id.*

[172] *Id.*

[173] *Id.*

[174] *Id.*

[175] *Id.*

[176] *Id.* However, the court elaborates on this factor: "[A]lthough the amount in controversy can be a factor in determining a reasonable fee, care should be used in putting much reliance on this factor. It is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000." *Id.* at 990.

[177] *Id.*

[178] *Id.* at 990.

48 motions that underwent full briefing, with multiple motions for summary judgment. The trial lasted 17 days. Nearly every step was intensely hard fought by both sides.[179] Consequently, fees are high.

The number of attorneys and paraprofessionals working on this case was not unreasonable. Merely enumerating the number of attorneys working on a case is meaningless if unnecessary duplication of efforts is not shown. And though it is true First American changed its lead counsel just a few months before trial, the defendants do not object to any specific entry in the time log and an independent review of the time log does not show an unnecessary duplication of efforts. As for paraprofessionals, the Utah Supreme Court has stated that paraprofessional fees are properly included as an element of attorneys' fees. "[A]llowing recovery for legal assistant fees promotes lawyer efficiency and decreases client litigation costs because a lawyer's time is free from tasks a legal assistant can perform at a lower rate."[180] There is no indication that the work done by paraprofessionals was superfluous or duplicative.

It is true that courts must referee appropriate attorneys' fees. That does not mean courts play the part of Monday-morning quarterback, second-guessing every staffing decision.

Second, the work performed was necessary to adequately prosecute the matter. After reviewing the affidavits and exhibits attached to the Motion for Attorneys' Fees, the work expended by First American's counsel was necessary. Though many of the entries in the timesheets attached to First American's affidavits relate to internal communication, complex cases require significant collaboration. It is appropriate that attorneys bill for the time it takes to collaborate.

---

[179] *See* First American's Motion for Attorneys' Fees at 6–7 (summarizing the work actually performed).

[180] *Baldwin v. Burton*, 850 P.2d 1188, 1200 (Utah 1993).

Relatedly, fees will not be reduced because "the amount involved in the case [was lower than] the result attained."[181] "It is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000."[182] Though First American sought more than the jury returned, this does not justify denying attorneys' fees.

Third, the Snell & Wilmer attorneys' billing rate is consistent with the rates customarily charged in Utah. From Jones Day, Ducatman's, McLaughlin's, Cutts's, and McVoy's billing rates are not. Those will be adjusted to match the fees charged by similarly experienced attorneys at Snell & Wilmer. They are adjusted specifically as follows:

| Attorney | From: | To: |
| --- | --- | --- |
| Ducatman | $783.68 | $517 |
| McLaughlin | $581.44 | $517 |
| McVoy | $489.70 | $315 |
| Cutts | $472.50 | $315 |

This reduces the fees attributable to Jones Day from $2,005,659.69 to $1,527,382.74. First American shall do a line-item accounting of how this affects the attorneys' fees ascribed to the specific causes of action; i.e., the new fee amount for the breach of contract causes of action and for the cause of action for Smith's breach of fiduciary duty. First American shall submit this accounting with a supporting declaration.

**3. First American is entitled to its costs.**

Defendants make two arguments against allowing the costs First American requests. One is based on grammar and the other on characterization.[183]

---

[181] *Dixie State Bank*, 764 P.2d at 989.

[182] *Id.* at 990.

[183] Defendants' Opposition to Attorneys' Fees at 10.

28 U.S.C. § 1920 governs what is properly awardable in the Bill of Costs. Smith's and Williams's contracts provide for recovery of costs beyond those allowed by § 1920. Their contracts state:

> In the event any action be instituted by either party to interpret or enforce any of the terms or conditions of this Agreement, the prevailing party shall be entitled to recover attorney's, accountant's, and expert witness fees and costs.[184]

Defendants argue that because there is not a "serial comma following 'expert witness fees' and before 'costs' [this] indicates that 'costs' is tied to 'expert witness fees' and does not apply generally to all of the fee categories listed." [185] Defendants' grammar parsing is not convincing. Failure to include the Oxford comma after "expert witness fees" does not necessarily mean that the only recoverable costs are those incurred in relation to the expert witnesses. This would make the presence of "attorney's" and "accountants" meaningless without an object. "Fees and costs" follows with each category of professional in the series.

Defendants also argue that there is nothing that suggests that First American should be entitled to an "award of anything more than ordinary taxable costs. FATCO has lumped in every imaginable costs treating costs as a limitless slush fund."[186] First American seeks $250,771.27[187] in costs.[188] Of that, $222,716.05 is attributable to expert fees. For the remaining $28,055.27, $25,668.61 is for legal research, $145.30 for long-distance calling, $426.00 for courier services,

---

[184] Exhibit 1 Smith's Employment Agreement at 4, docket no. 493-1, filed January 17, 2017; Exhibit 2 Williams's Employment Agreement at 4, docket no. 493-2, filed January 17, 2017.

[185] Defendants' Opposition to Attorneys' Fees at 10.

[186] *Id.* at 10.

[187] There are multiple discrepancies between the motion and the declaration. First American's Motion for Attorneys' Fees at 10 includes $38,605.53 for "travel charges," $1,854.65 for "expedited mail," $512.38 for "long distance calling," and $25,877.99 for "legal research." By contrast, the Sorenson Declaration does not includes charges for "travel charges" or "expedited mail," for "long distance calling" it has $145.30, and for "legal research" it has $25,668.61. The expenses in the motion, therefore, total $291,807.96. The amounts in the Sorenson Declaration are the only ones discussed above.

[188] Sorenson Declaration at 8–9.

$95.20 for pacer services, $656.97 for FEDEX charges, and $1,063.00 for miscellaneous trial costs (*e.g.*, parking fees and meals).[189] There is no question that the plain language of the contracts includes expert fees. And the remaining fees represent "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."[190]

Therefore, First American is entitled to the award of $250,771.27 in costs.

---

[189] *Id.* at 9.

[190] *Clearone Communications, Inc. v. Chiang*, No. 2:07-cv-37-TC-DN, 2009 WL 5216856 at *7 (D. Utah Dec. 30, 2009) (internal quotation marks omitted).

## ORDER

IT IS HEREBY ORDERED that defendants' Motion for New Trial and Memorandum in Support[191] is DENIED.

IT IS FURTHER ORDERED that defendants' Motion for Attorney Fees and Memorandum in Support[192] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Award of Attorneys' Fees, Costs and Expenses[193] is GRANTED IN PART and DENIED IN PART. Fees attributable to Jones Day shall be reduced from $2,005,659.69 to $1,527,382.74 according to the table above. In order to properly apportion the fees between Williams and Smith, First American shall do a line-item accounting of the Jones Day fees at the reduced rates. First American shall provide this accounting with supporting declaration within 14 days from the entry of this order.

IT IS FURTHER ORDERED that Plaintiffs' request for additional attorneys' fees for post-trial activity is GRANTED in the amount outlined in the Supplemental Declaration of Amy F. Sorenson in Support of First American's Motion for Award of Attorney Fees and Expenses.[194]

Signed April 24, 2017.

BY THE COURT

District Judge David Nuffer

---

[191] Docket no. 520, filed January 31, 2017.

[192] Docket no. 492, filed January 17, 2017.

[193] Docket no. 493, filed January 17, 2017.

[194] Docket no. 536-3, filed February 17, 2017.